Backman et al. v. United States Shipping Board Emergency Fleet Corporation.

*Vendor and vendee—Executory agreement—Interest of parties.*

1. Upon the execution of an agreement for the sale of real estate the vendee becomes the equitable owner; any right claimed by the vendor must have been specifically conferred in the agreement.

*Bill for specific performance—Demurrer—Admission of construction of agreement averred in bill.*

2. A demurrer to a bill for specific performance admits the construction placed upon the agreement of sale by the bill in the absence of anything in the bill, or exhibits attached thereto, that would indicate a different meaning; the fact that the copy of the agreement of sale attached to the bill refers to a schedule which is not attached as an exhibit, and which might possibly have shown the construction placed upon the agreement as inadmissible, will not prevent the application of the principle.

Demurrer to bill. C. P. No. 5, Phila. Co., March T., 1921, No. 7741, in Equity.

*J. L. Kun* and *M. Wolf,* for plaintiffs.

*W. Y. C. Anderson* and *C. D. McAvoy,* for defendant.

MARTIN, P. J., Jan. 4, 1922. — The bill in this case avers that Hyman Backman, Jacob A. Berger and Sol. Hopkins entered into a written agreement dated March 20, 1920, to purchase from the defendant 1479 houses and lots in the City of Philadelphia, described in the contract of sale, for the price of $5,541,800. A copy of the agreement is annexed to the bill, marked

Backman et al. *v.* United States Shipping Board Emergency Fleet Corporation.

"Exhibit A." The use-plaintiffs acquired their interest by assignment from the grantees named in the contract.

Settlement has been made for certain of the properties, and the use-plaintiffs are now prepared to take 149 of the properties and pay $126,248.18, the price agreed upon, but have requested defendant to allow them credit for $55,000, realized by defendant from the sale of 494 of the houses which defendant sold to tenants by whom they were occupied.

It is stated in paragraphs 6, 7 and 8 of the bill of complaint: "At and previous to the making of the agreement, Exhibit A, the houses which were the subject of that agreement, and mentioned therein, were occupied by various persons, who held them under leases from the defendant, and, in order to give such persons an opportunity to purchase their homes, the defendant requested that, notwithstanding the agreement about to be made with the complainants for the purchase of the 1479 houses for the gross consideration above mentioned, the defendant should be permitted to sell any of said houses to the tenants thereof up to and including April 15, 1921, and the complainants agreed to this request, which was embodied in the agreement in the following provision: 'The parties of the second part agree that the party of the first part may sell any of the houses to the tenants up to and including April 15, 1920.' "

7. The purpose and intention of the said provision was expressed by defendant, at and before agreement of sale was signed, to be the removal of the possibility of any criticism of defendant by the tenants or by any one else, that the defendant, in selling the said properties to the complainants, had consulted its financial interests only, and had not attempted in any way to protect the tenants of the properties who might desire to purchase their homes. It was not contemplated or agreed that if the defendant should sell any of said houses for more than the prices specified in schedule "A" it was to retain the excess and thereby increase the gross consideration mentioned in the agreement to be received by the defendant, but, in order to leave itself free as to the prices at which it might sell such houses to tenants, and at the same time to protect complainants against sales at prices which might be less than the proportioned prices specified for mortgage purposes as aforesaid for each house, to make up the total agreed consideration mentioned in said agreement, the defendant agreed that in no event were the complainants to have a less credit on the sales of any houses so sold than the proportioned prices therefor so specified in schedule "A."

It was, therefore, provided in the said agreement as follows: "Should any sales be effected within said period, the party of the first part agrees to credit the parties of the second part with the purchase price of such house, as set forth in schedule 'A,' hereto annexed, on account of the total purchase price of $5,541,800 above mentioned at the time of final settlement."

8. Between March 8, 1920, and April 15, 1920, the defendant sold to tenants 494 of the houses involved in the agreement with complainants at purchase prices in excess of the figures specified in schedule "A" by $55,000.

The prayers of the bill are for an injunction to restrain the sale or conveyance of the 149 properties to any other persons than complainants; for specific performance of the contract of sale upon performance by complainants of the conditions to be performed by them, with an allowance of credit of the $55,000 realized by defendant upon sales of properties to tenants, and for general relief.

A demurrer was filed by defendants on the ground that the bill seeks to interfere with defendant's authority to sell the properties and to nullify the

1 D. & C.

Backman et al. *v.* United States Shipping Board Emergency Fleet Corporation.

authority conferred upon defendant by Congress, and a third cause, that "the bill on its face, and particularly on the face of the agreement attached as 'Exhibit A,' does not show that complainants are entitled to any of the relief prayed for by them. The copy of the agreement annexed to the bill stipulated the amount of mortgage to remain upon each house, and that it shall be 'equivalent to 80 per cent. of the amount of purchase price specified for each of said houses, and more particularly set forth in schedule 'A' hereto attached and made part of this agreement;" but the schedule is not annexed to the bill of complaint. That clause of the agreement which provides, should sales be effected by defendant credit is to be allowed the vendees for "the purchase price of such house, as set forth in schedule 'A' hereto annexed," may have reference to the "house" set forth in schedule "A," or mean that the "price" to be credited appears in the schedule. In the absence of the schedule to indicate a different meaning, it is fair to regard the construction given to the sentence in the 7th paragraph of the bill when considering the question of a demurrer, which admits the facts averred. The bill states, "it was not contemplated or agreed that if defendant should sell any of said houses for more than the prices specified in schedule 'A' it was to retain the excess and thereby increase the gross consideration mentioned in the agreement to be received by the defendant."

This construction accords with the legal position of parties after the execution of a contract for the sale of real estate, unless altered by its terms.

Upon signing the agreement of sale the vendees became equitable owners of the houses. The vendor reserved a lien for the consideration agreed to be paid as the purchase price. Any right claimed by the vendor to dispose of the fee in the houses that were included in the agreement of sale subsequently to the date of its execution must have been conferred specifically in the agreement.

The demurrer is overruled and defendant is granted leave to answer.